IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| CORWIN L. TELTSCHIK, | § | |
| *Plaintiff* | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. _____ |
| | § | (JURY DEMANDED) |
| WILLIAMS & JENSEN, PLLC, WILLIAMS | § | |
| & JENSEN, P.C., BARBARA WIXON | § | |
| BONFIGLIO, DON F. MCGAHN, II, | § | |
| MEREDITH G. KELLEY, ROBERT J. | § | |
| MARTINEZ  and JOHN DOE | § | |
| DEFENDANTS 1 - 10 | § | |
| *Defendants* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

### PARTIES

Plaintiff, Corwin L. Teltschik, is a resident of Fort Bend County, Texas.

Defendant, Williams & Jensen, PC, is a professional corporation with offices and doing business at 1155 21st Street, NW, Suite 300  Washington, DC 20036.  It may be served with process by serving its registered agent, J. Steven Hart, its president or any other officer capable of accepting service.  It has purposefully availed itself of the privilege of conducting activities within Texas by representing parties in litigation in this state, including in the United States District Court, Northern District of Texas.

Defendant, Williams & Jensen, PLLC, is a professional corporation with offices and doing business at 1155 21st Street, NW, Suite 300  Washington, DC 20036.  It may be served with process by serving its registered agent, J. Steven Hart, its president or any

other officer capable of accepting service.  It has purposefully availed itself of the privilege of conducting activities within Texas by representing parties in litigation in this state and by taking depositions within this District.

Williams & Jensen was originally a professional corporation (P.C.).  Williams & Jensen is now shown on its website to be a PLLC.  Plaintiff does not know if the PLLC is a successor to the P.C. but Martinez is shown to be a principal in both.  The 2 entities are referred to collectively as Williams & Jensen.  Bonfiglio, Kelley and Martinez are or were at relevant times, employees / principals / partners of Williams & Jensen and it should have to respond for the damages that they caused under the theory of *respondeat superior*.

Defendant, Barbara Wixon Bonfiglio, is believed to be an individual resident citizen of Maryland, who may be served with summons at her place of employment, Pfizer, Inc. 375 7th Street NW  Suite 1200  Washington, DC 20004.  She has purposefully availed herself of the privilege of conducting activities within Texas by contacting Plaintiff  at his office in this state and soliciting his consent to represent him in connection with the hereinafter described complaint.

Defendant, Don F. McGahn, II is believed to be an individual resident citizen of Virginia, who may be served with summons at his place of employment: 601 Pennsylvania Avenue NW, Suite 9005  Washington D.C. 20004.   He has purposefully availed himself of the privilege of conducting activities within Texas by representing parties in connection with threatened litigation in this state and by threatening to file suit against persons in Texas.

Defendant, Robert J. Martinez, is believed to be an individual resident citizen of Virginia, who may be served with summons at his place of employment, Williams & Jensen

P.C. 1155 21st St NW #300 Washington D.C. 20036-3308. He has purposefully availed himself of the privilege of conducting activities within Texas by representing parties in litigation in this state, including in the United States District Court, Northern District of Texas, and in depositions taken in Houston.

Defendant, Meredith G. Kelley, is believed to be an individual resident citizen of Virginia, who may be served with summons at her place of employment, Williams & Jensen P.C. 1155 21st St NW #300 Washington D.C. 20036-3308. She was, at all times relevant hereto, an associate with Williams & Jensen.

John Doe Defendants are unknown persons who may have participated in the tortious conduct of which Plaintiff complains.

**JURISDICTION**

Plaintiff is a resident citizen of Texas. Defendants are all citizens of states other than Texas. The amount in controversy exceeds the sum or value of $75,000. This Court therefore has jurisdiction of this case under 28 U.S.C. § 1332.

**FACTS COMMON TO VENUE AND ALL CAUSES OF ACTION**

1.   Plaintiff resides in Sugar Land, Fort Bend County, Texas and has for more than 20 years.

2.   Plaintiff is an attorney, licensed by the Supreme Court of Texas to practice law since 4/16/1973. His license is current and in good standing. He conducts an active law practice, with offices in Harris County, Texas.

3.   In 1994, then U.S. Representative Tom DeLay caused a political action committee to be formed under and pursuant to the Federal Election Laws for the purpose of assisting candidates for election to the U.S. House of Representatives. The

committee was known as ARMPAC which was an acronym for "Americans for a Republican Majority Political Action Committee."  Mona Stevens was originally designated as Treasurer and Barbara Bonfiglio (then Wixon) was designated as the Assistant Treasurer and Custodian of Records of ARMPAC.  Bonfiglio was then an attorney and a principal in the law firm of Williams & Jensen.  She remains an attorney but is no longer employed by Williams & Jensen.

4.      On or about April 4, 1995, a Second Statement of Organization was filed on behalf of ARMPAC.  Such Second Statement removed Mona Stevens as Treasurer and designated Bonfiglio as Treasurer of ARMPAC.

5.      On or about May 1, 1995, Christine DeLay  came to Plaintiff's office in Houston and asked Plaintiff to become the Treasurer of ARMPAC.  As part of the inducement to Plaintiff, Christine DeLay told him that: (i) they were asking him to be Treasurer because  ARMPAC would be soliciting political contributions from people in the community who were familiar with Plaintiff and his reputation and that Plaintiff's association with  ARMPAC would benefit any such solicitations; (ii) Williams & Jensen was a well respected law firm in Washington, D. C. and was particularly well known for its expertise and experience representing political action committees; (iii) because of the political nature of ARMPAC there would be considerable scrutiny of its affairs by press, opposition politicians and governmental regulatory authorities so  Williams & Jensen would be handling all of the financial affairs of ARMPAC; (iv) Williams & Jensen would prepare and file all returns required to be filed with the Federal Election Commission "to make sure that all the I's were dotted and all of the T's were crossed;" and (v) Williams & Jensen would make sure that ARMPAC

complied with all of the Federal Election laws.  Plaintiff had no familiarity with Federal election laws and regulations, relied upon such representations, and would not have agreed to serve as Treasurer unless competent counsel was retained to perform such duties.  Christine DeLay also told Plaintiff that they (Williams & Jensen) had asked her to find a lawyer to serve as Treasurer.

6.     After Christine DeLay asked him to become Treasurer of ARMPAC, but  before the Third Statement of Organization was filed with the FEC, Plaintiff spoke with Bonfiglio, at Williams & Jensen regarding his lack of familiarity with Federal election laws and regulations.  Bonfiglio assured Plaintiff of Williams & Jensen's experience and expertise in this area and their ability to make sure that all laws were complied with.  Bonfiglio specifically represented to Plaintiff that Williams & Jensen was very competent to handle Political Action Committee matters and that she and Williams & Jensen had considerable experience in such matters.  Plaintiff relied upon these additional representations.

7.     On or about May 11, 1995, the Third Statement of Organization for ARMPAC was filed.  This document bears Plaintiff's signature and designates him as Treasurer and Bonfiglio as Assistant Treasurer.  The document also shows that Bonfiglio will be the Custodian of Records of ARMPAC.  On information and belief, Williams & Jensen received all funds, made all disbursements, kept the checks, check books, check registers and bank statements and filed all required reports of the financial activity of and for ARMPAC.  Acting as Treasurer, Plaintiff requested and authorized Williams & Jensen to keep the records of ARMPAC, file the necessary returns and provide legal advice and representation.  Bonfiglio, as Assistant Treasurer was

authorized to sign checks on behalf of ARMPAC.  Plaintiff was not authorized to sign checks on behalf of ARMPAC.  Williams & Jensen (and Bonfiglio) were paid for their services.  Plaintiff did not receive any compensation or other benefit  for serving as Treasurer of ARMPAC.

8.     On or about March 7, 2001, a Fourth Statement of Organization for ARMPAC was filed by Williams & Jensen with the Federal Election Commission.  Bonfiglio is identified as Assistant Treasurer on the form, but she signs on the line as the Treasurer of ARMPAC.  Plaintiff was never advised that this Statement was filed or provided any explanation as to why it was filed.  His signature does not appear on the form.

9.     On or about June 9, 2004, the Federal Election Commission sent a notice to Plaintiff that it would conduct an audit of ARMPAC.  Such notice was addressed to Plaintiff at William & Jensen's address in Washington, D.C. and was received by Williams & Jensen.  Plaintiff does not know how the FEC came to show his address as that of Williams & Jensen, as he never authorized any such designation to be filed with the FEC.  Williams & Jensen did not advise Plaintiff of its receipt of such notice and it did not provide a copy of such notice of audit to Plaintiff until approximately two years later, after Plaintiff learned of the Defendants' actions complained of herein.

10.    On or about September 28, 2004, the Fifth Statement of Organization for ARMPAC was filed by Williams & Jensen with the Federal Election Commission. The document recites Plaintiff as Treasurer and purports to bear his electronic signature. This document was prepared and filed by Williams & Jensen without the knowledge or consent of Plaintiff.  Williams & Jensen did not consult with or advise Plaintiff that

this Statement was going to be filed or advise Plaintiff of the reason for filing same. Plaintiff has never filed his signature electronically with the Federal Election Commission or knowingly permitted anyone else to file his signature electronically with the Federal Election Commission.

11.     On or about January 13, 2005, while at his office in Houston, Plaintiff received an inquiry from a reporter working for the Arizona Republic about an investigation into contributions related  to ARMPAC.  On that same day, Plaintiff called Christine DeLay at her home in Fort Bend County and left a message about the call from the Arizona Republic.  Plaintiff also called Tom DeLay's Washington office but got no response.  Plaintiff then called Bonfiglio, told her of the Arizona Republic inquiry and asked if all T's were still crossed and all I's dotted.  Bonfiglio assured Plaintiff that everything was O.K. and that she would have someone provide the requested information to the Arizona Republic.

12.     On March 31, 2005, the FEC sent an Interim Audit Report to Plaintiff at the offices of Williams & Jensen.  Such report disclosed discrepancies in the reports that were filed by Williams & Jensen on behalf of ARMPAC and required a response by ARMPAC on or before May 3, 2005.  Williams & Jensen did not apprise Plaintiff of the receipt of such report nor did it disclose the content of such report to Plaintiff or that it contained a deadline for a response.

13.     On April 22, 2005, the FEC sent to Plaintiff at the address of Williams & Jensen a notice of extension of the deadline to file a response to the Interim Audit Report that extended the deadline until May 18, 2005.  Williams & Jensen did not advise Plaintiff that an extension had been requested or that one had been granted or the

date of the extended deadline.  Williams & Jensen did not advise Plaintiff of the response to the Interim Audit Report or of the final Audit Report.

14. On August 17, 2005, the FEC sent a letter addressed specifically to Plaintiff, at William & Jensen's address.  This letter recites that the FEC "received a complaint that indicates that Americans for a Republican Majority Political Action Committee ("ARMPAC") and you, as treasurer, may have violated the Federal Election Campaign Act of 1971, as amended ("the Act")."  The letter also recites: "If you intend to be represented by counsel in this matter, please advise the Commission by completing the enclosed form stating the name, address and telephone number of such counsel, and authorizing such counsel to receive any notifications and other communications from the Commission."  Williams & Jensen did not advise Plaintiff that it had received such letter, the substance of its content, or that it contained deadlines for a response.  Williams & Jensen failed to provide Plaintiff with a copy of this letter until November 7, 2006, after the actions of Defendants complained of herein became known to Plaintiff.  Plaintiff never signed any document changing his address with the FEC from his Sugar Land address or otherwise authorizing communications to be sent to him at Williams & Jensen's address.

15. On or about September 6, 2005, Bonfiglio (of Williams & Jensen) called and talked by phone several times with Plaintiff at his office in Houston, Texas.  In those conversations she advised him that a complaint (the "complaint") had been filed with the Federal Election Commission against ARMPAC, and advised him she was going to fax to him some documents that required his signature in connection with the complaint.   Bonfiglio told Plaintiff that the complaint was without merit, that any

infractions were of the inadvertent clerical type and that the complaint was nothing but a nuisance harassment tactic by CREW.  Plaintiff specifically asked why his signature was required now but had never been required for any activities with the FEC before.  Bonfiglio responded that "it didn't make any difference because this is the way we are going to do it now." Bonfiglio's fax requested that Plaintiff sign, in blank, a consent form required by the FEC to permit a party to a Commission proceeding to be represented by counsel. The fax did not include a copy of the complaint or in any manner disclose the substance of the complaint.  Bonfiglio specifically did not, in any of such communications, advise Plaintiff that he had also been personally named as a respondent in the complaint and that relief was sought against him.  Plaintiff reasonably assumed Bonfiglio's request was for the purpose of enabling Williams & Jensen to appear before the Commission on behalf ARMPAC in connection with the complaint.  Plaintiff told her that he would not sign the requested authorization because he wanted to be kept informed about the progress of the complaint and wanted any communications with the FEC to be directed to and through him personally.

16.    Plaintiff was never personally served with the complaint filed with the FEC.  No one had Plaintiff's authorization to file an answer or otherwise enter his appearance before the FEC.  Williams & Jensen sought and received an extension of time in which to respond to the complaint.

17.    On September 30, 2005, Bonfiglio signed and filed a Statement of Designation of Counsel – in connection with MUR 5675 (the complaint) – with the FEC.  In this document Bonfiglio represented the Respondent's name to be: Barbara Bonfiglio,

Assistant Treasurer, ARMPAC and showed her title to be Assistant Treasurer.  She showed her address to be Williams & Jensen's.  The name of counsel was shown to be McGhan.  Plaintiff was not told or otherwise advised that such consent was filed or that McGahn would be representing ARMPAC.  Specifically, Plaintiff was never advised that McGahn was going to represent him in connection with anything.  Plaintiff did not become aware of such designation until November 7, 2006, after he learned of the actions of Defendants complained of herein.

18.   An answer to the complaint was filed.  Plaintiff has not seen a copy of the answer that was actually filed.  On November 7, 2006, Martinez provided Plaintiff a copy of a draft of the answer to the Complaint.  This draft asserts no defenses or otherwise answers the Complaint for Plaintiff.  If this draft was the answer that was actually filed, Defendants placed Plaintiff in the position of appearing to have been served with the Complaint but not having filed an answer or otherwise entered an appearance in the proceedings before the FEC.

19.   On November 1, 2005, McGhan sent a letter addressed to Barbara Bonfiglio, Treasurer ARMPAC.  This letter was sent to Williams & Jensen's address.  It contained an invoice for services rendered by McGahn.  On November 3, 2005, Bonfiglio signed a check for $7,890 to McGhan to pay his invoice.  None of the Defendants advised Plaintiff of such actions.  On or about November 15, 2005, James W. Ellis, representing himself to be ARMPAC Executive Director, signed / approved an "ARMPAC INVOICE" payable to McGahn & Associates, PLLC, on which the Invoice was shown to be "Attorney Retainer" in the amount of $7,500.  On November 15, 2005, Bonfiglio signed an ARMPAC check in the amount of $7,500

to pay McGhan's retainer.   None of the Defendants advised Plaintiff that such actions were taking place.

20.    At 3:15 p.m. on August 6, 2006, Plaintiff first received a copy of the Conciliation Agreement.  It was faxed to him by his wife who had accidentally found it on the internet.  It was only at that time that he learned that the Conciliation Agreement had been entered into with the FEC, that he was personally named in the proceeding as a respondent and was made a party to such Conciliation Agreement – without his permission, authorization or knowledge –  in his "official capacity as treasurer of ARMPAC."   The Conciliation Agreement was signed by Kelley, "for the respondents", with no designation of her capacity, how she was authorized to act for the "respondents", or her address and telephone number.  This was the first time that Plaintiff definitively learned that he had been named as a respondent in the FEC complaint.

21.    Upon reviewing a copy of the Conciliation Agreement, Plaintiff learned that Kelley (and Williams & Jensen) had agreed that he, "acting in his official capacity as treasurer of ARMPAC", had violated various federal election laws – some of which laws are felonies.  Based upon the Conciliation Agreement, Plaintiff concludes that someone at Williams & Jensen, or McGhan, purported to represent Plaintiff before the FEC in negotiating the Conciliation Agreement and in the proceedings.

22.    On August 15, 2006, Plaintiff sent Williams & Jensen a fax, requesting an explanation of the Conciliation Agreement that had been filed with the FEC.

23.    Sometime in the next several weeks, Plaintiff received a call from Martinez, who advised that he was the managing partner at Williams & Jensen.  When pressed,

he acknowledged that McGhan had been retained to negotiate the settlement with the FEC on behalf of ARMPAC and Plaintiff.  Martinez told Plaintiff that McGhan had been hired by Tom DeLay and/or James Ellis but that McGhan's fees had been paid by ARMPAC.  Martinez told Plaintiff that McGhan had a letter whereby Plaintiff had authorized McGhan to represent him in negotiating the settlement of the complaint.  Plaintiff denied giving McGhan any authorization to represent him. Plaintiff obtained McGhan's cell phone number from Martinez.

24.    Plaintiff called McGhan.  When he finally reached him, McGhan stated that he had a letter authorizing him to represent Plaintiff in negotiating the settlement with the FEC.  Plaintiff requested that he be sent a copy of same.  McGhan stated that he was busy with the upcoming elections and that he would get around to it as his schedule permitted.   After several weeks of no further response from McGhan, Plaintiff began calling him again, to no avail.

25.    On September 26, 2006, Plaintiff sent a fax to Williams & Jensen, requesting the organizational documents of ARMPAC.   On October 4, 2006, Martinez called Plaintiff at his Houston office, advising that he was going to be in Houston, taking depositions on a Texas case and wanting to meet with Plaintiff or to have lunch with him while he was in Houston.  He called again while in Houston.  Plaintiff was unable to meet with Martinez because of scheduling conflicts.

26.    On October 9, 2006, Williams & Jensen faxed to Plaintiff some of the requested formation documents and sample bank statements.  Plaintiff learned for the first time that Bonfiglio had caused other bank accounts to be opened in ARMPAC's name at two different banks – one of which was associated in the press with Jack

Abramoff.  Plaintiff did not know the existence of such accounts and was not authorized to sign checks on either of such accounts.

27.   On or about November 7, 2006, Plaintiff obtained more documents from Martinez at Williams & Jensen.  These documents included correspondence between McGhan and Williams & Jensen and a copy of the November, 2005, ARMPAC check to McGhan for his representation in the FEC complaint.  Such check was signed by Bonfiglio.  Martinez's letter also disclosed that all checks had been signed by Bonfiglio or Kelley.  Contained within these documents was a letter from the FEC to McGhan indicating that it (FEC) had signed off on the Conciliation Agreement that McGhan had submitted on behalf of his clients (ARMPAC and Plaintiff).  From that document, it appears that McGhan represented to the FEC that Plaintiff was his client.

28.   Contained within the documents that Martinez sent to Plaintiff on November 7, 2006, was a draft of the response to the FEC Complaint that was filed by Defendants on behalf of ARMPAC.  Such response does not include Plaintiff.  It therefore appears from the November 7, 2006, documents that Defendants only filed a response for ARMPAC and did not in fact file a response on behalf of Plaintiff, subjecting him to an adverse judgment by default.

29.   Also contained within the documents that Martinez faxed to Plaintiff was an email that purports to be from James W. Ellis, "Executive Director Americans for a Republican Majority - ARMPAC", dated April 20, 2004 and directed to Bonfiglio.  By this email, Ellis requested Bonfiglio to adjust the payroll figures to reflect the following monthly amounts: Jim Ellis – $9,000; Chris Perkins – $5,500; and Dani

Delay Ferro – $4,500.  Ellis also requested some retroactive payments to the same individuals, to be handled via a lump sum payment.  Plaintiff was not aware of these payments until November, 2006, and might not have approved same in the first instance.

30. After he had an opportunity to review and digest the documents that he received, Plaintiff called Martinez and spoke to him.  Martinez told Plaintiff that the FEC complaint against ARMPAC was "completely defensible."  When Plaintiff asked Martinez why it wasn't defended and to explain how the violations (that were recited in the Conciliation Agreement) had occurred, Martinez told Plaintiff that they (Williams & Jensen) had been instructed by the principals of ARMPAC to write all of  the disbursement checks in question and that he believed that they (the principals of ARMPAC) wanted this to "go away" because of the situation of Tom DeLay and James Ellis in the Texas criminal courts.  Plaintiff subsequently spoke to McGhan about this and McGhan told him that the reason that the Conciliation Agreement was negotiated was because Williams & Jensen "dropped the ball" when they allocated certain costs inappropriately on the returns filed with the FEC.  Plaintiff then relayed McGahn's  statements to Martinez about Williams & Jensen "dropping the ball." Martinez replied with a statement to the effect that "if they were going to play that sort of game" then "they were going to have to explain why they had provided the information to allocate the costs" – specifically using the "garbage in – garbage out" analogy.  Martinez did not identify the "they" to whom he was referring.

31. Plaintiff told Martinez how the Conciliation Agreement placed him (and his law

license) under the sword of Damocles – that there was an administrative judgment reflecting that Plaintiff had engaged in felonious conduct.   Martinez had two responses: (i) his first response was to the effect of, how did Plaintiff think that the Conciliation Agreement made Williams & Jensen look, and (ii)  that the Conciliation Agreement was only in Plaintiff's "official capacity."  Plaintiff responded that the State Bar Rules make no distinction between violating felony laws in an individual or representative capacity. Plaintiff asked Martinez to do whatever it took to get his name off of the Conciliation Agreement.  Martinez said that he would check into it.

32.   A while later, Martinez called Plaintiff at his Houston office and advised that Williams & Jensen just wanted to shut ARMPAC down but couldn't since it lacked about $7,500 to pay the agreed upon amount to the FEC under the Conciliation Agreement and wasn't receiving any donations since Tom DeLay had resigned his seat in Congress.  Plaintiff again told Martinez that he wanted his name off of the Conciliation Agreement.  Martinez was non-committal.

33.   Williams & Jensen and Martinez have recently arranged to pay the remaining portion of the fine agreed upon in the Conciliation Agreement so that the Conciliation Agreement may be concluded.  In connection therewith, Williams & Jensen have caused to be filed with the FEC additional documents that purport to bear Plaintiff's electronic signature.  Plaintiff did not sign or authorize anyone to sign his name to those documents.

34.   **FIRST CAUSE OF ACTION – DECLARATORY JUDGMENT:**  Plaintiff incorporates paragraphs 1 - 33 in support of this cause of action.  Pursuant to the provisions of 28 U.S.C. § 2201 and Chapter 37, TEX. CIV. PRAC. & REM. CODE, Plaintiff sues for

a declaratory judgment that none of the Defendants were authorized to enter an appearance on his behalf on the complaint, that he did not otherwise enter an appearance in the proceedings before the Federal Election Commission concerning ARMPAC that resulted in the Conciliation Agreement referred to above, and that none of the Defendants were authorized to negotiate any settlement with the FEC for him – in any capacity.

35.   Plaintiff also sues for a declaratory judgment that the FEC had no jurisdiction over him (to enter the Conciliation Agreement), as he had not been served with process requiring him to file an answer and appear and because none of the Defendants had any authority to enter his appearance in those proceedings or to otherwise confess judgment against him – in any capacity.

36.   Plaintiff also sues for a declaratory judgment that the Statement of Designation of Counsel filed in connection with MUR 5675 (the complaint) by Bonfiglio with the FEC was a judicial admission by her that she was the person responsible (and the proper Respondent) for the violations that were the subject of the complaint.

37.   Plaintiff also sues for a declaratory judgment that he signed none of the checks, had no authority to sign checks for ARMPAC, did not participate in the inappropriate allocation of costs found in the FEC audit, and did not participate in the filing of any of the inappropriate disclosures set forth in the reports that were the subject of the complaint with the FEC.

38.   Plaintiff also sues for a declaratory judgment that he is entitled to indemnification from, and to be held harmless by, the Defendants for the costs of defense and appeal if the FEC takes any further action or if the State Bar of Texas, or the Bar of

any other court in which Plaintiff is licensed, takes any action against Plaintiff's license to practice law because of the recitations in the complaint or the facts underlying same, or because of the recitations and findings in the Conciliation Agreement.

39.     Plaintiff also sues for a declaratory judgment that he has never filed his signature electronically with the Federal Election Commission or knowingly permitted anyone else to file his signature electronically with the Federal Election Commission.

40.     Pursuant to the provisions of Chapter 37, TEX. CIV. PRAC. & REM. CODE, Plaintiff sues for reasonable attorney's fees for having to bring this suit to obtain a declaratory judgment.

41.     **SECOND CAUSE OF ACTION – BREACH OF FIDUCIARY DUTY:** Plaintiff incorporates paragraphs 1 - 33 in support of this cause of action.  In the alternative, but without waiving the foregoing, the defendants, all of whom are lawyers**,** undertook to and did provide legal services to, for and on behalf of Plaintiff – both authorized and unauthorized.  All of them were compensated (by ARMPAC) for the legal services that they provided to, for and on behalf of Plaintiff – authorized and unauthorized.   Bonfiglio (and William & Jensen) specifically sought Plaintiff's authorization to represent Plaintiff before the FEC on the complaint. As such, the Defendants owed Plaintiff a fiduciary duty.

42.     In his capacity as Treasurer of ARMPAC, Defendants Williams & Jensen, Bonfiglio and Kelley, provided legal services and advice to Plaintiff.  In that capacity, these Defendants also owed Plaintiff a fiduciary duty.

43.     Defendants breached that fiduciary duty by the conduct set forth above.  These

breaches of fiduciary duty have been a proximate cause of damage to Plaintiff, for which he now sues.

44. Because of the breaches of fiduciary duty, Plaintiff sues Defendants for fee forfeiture.

45. Defendants' conduct is of such a nature as to support the imposition of punitive damages, for which he now also sues.

46. **THIRD CAUSE OF ACTION – NEGLIGENCE:** Plaintiff incorporates paragraphs 1 - 33 in support of this cause of action.  In the alternative, but without waiving the foregoing, Defendants were negligent in their performance as attorneys.  This negligence has been a proximate cause of damage to Plaintiff, for which he now sues.

47. The Defendants' conduct is so egregious as to constitute gross negligence, entitling Plaintiff to have and recover punitive damages, for which he now also sues.

48. **FOURTH CAUSE OF ACTION – LIBEL / MISAPPROPRIATION OF NAME AND REPUTATION:** Plaintiff incorporates paragraphs 1 - 33 in support of this cause of action.  In the alternative, but without waiving the foregoing, Defendants libeled Plaintiff by accusing him of criminal conduct and by confessing judgment – without authorization – against him to that same effect.  This is libel *per se*.  Plaintiff sues for his damages arising from the libel *per se*, past, present and future.

49. Alternatively, but without waiving any of the foregoing, Defendants have misappropriated Plaintiff's name and reputation and caused a Conciliation Agreement to be entered – ostensibly authorized by Plaintiff but not – that brands Plaintiff a criminal and subjects Plaintiff to action by the State Bar of Texas.  This

has caused Plaintiff damage, past, present and future, for which he now sues.

50.   Plaintiff sues Defendants for punitive damages, as allowed by law, for this conduct.

51.   **FIFTH CAUSE OF ACTION – TORTIOUS INTERFERENCE / BUSINESS DISPARAGEMENT:** Plaintiff incorporates paragraphs 1 - 33 in support of this cause of action.  In the alternative, but without waiving the foregoing, by the conduct set forth above, Defendants tortiously interfered with Plaintiff's existing contracts and with Plaintiff's prospective economic advantage.  They also disparaged Plaintiff in his business and occupation.  This conduct was a proximate cause of damage to Plaintiff, for which he now sues.  It is to be anticipated that these damages will continue into the future, so Plaintiff also sues for future damages arising from this.

52.   **Attorney's Fees:** Based on the foregoing and to the extent permitted by law, Plaintiff sues to recover his reasonable and necessary attorney's fees.

53.   **Damages:** Plaintiff alleges that he has suffered the following general and special damages as a direct, proximate result of Defendants' conduct:

a.   Injury to his professional reputation;

b.   Injury to his personal reputation; and

c.   Mental anguish that has caused a substantial disruption in Plaintiffs' daily routine and has made Plaintiff unable to work for extended periods of time.

d.   Plaintiff alleges that these damages will continue for a reasonable period into the future.

e.   Plaintiff alleges that his damages exceed $75,000.

54.   Because of the breaches of fiduciary duty by the Defendants, Plaintiff sues for fee

forfeiture.

55.  **Punitive Damages:** Plaintiff sues for punitive damages, in an amount to be determined by the trier of fact.  Plaintiff alleges that the Defendants' conduct, detailed above, violates § 32.43, Texas Penal Code and that the caps contained in § 41.008, Tex. Civ. Prac. & Rem. Code should not, therefore, apply.

56.  **CONCLUSION:** Defendants should be cited and required to answer herein.  Upon final trial, Plaintiff should have and recover judgment against the Defendants, jointly and severally, for:

a.  The declaratory relief set forth above;

b.  Actual damages, past, present and future, as set forth above;

c.  Fee forfeiture;

d.  Punitive damages as set forth above;

e.  Reasonable and necessary attorney's fees, as set forth above;

f.  Costs of court expended;

g.  Pre-judgment interest and post-judgment interest, as allowed by law; and

h.  Such other and further relief, general or special, legal or equitable, to which Plaintiff may show himself to be justly entitled.

Respectfully submitted,

Reginald E. McKamie SBOT #13686750
S.D. #8303
1210 Antoine Drive, Suite 1000
Houston, TX, 77055
(713) 263-9252
Fax: (713) 263-9256


L.T. "Butch" Bradt SBOT #02841600
S.D. #4272
5151 San Felipe, Suite 1950
Houston, Texas 77056
(713) 681-2696
Fax: (713) 255-3242
Attorneys for Plaintiff